UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.
                                                            Case No. 14-cr-20561
                                                              District Judge Paul D. Borman

WILLIE QUAWN BROWN,

    Defendant.
                                      /

**AMENDED ORDER GRANTING DEFENDANT BROWN'S MOTION FOR COMPASSIONATE RELEASE, PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF NO. 24), REDUCING THE SENTENCE TO TIME SERVED AND IMPOSING SUPERVISED RELEASE FOR THE REMAINDER OF THE UNSERVED PORTION OF HIS ORIGINAL TERM OF IMPRISONMENT, WITH THE SPECIAL CONDITION OF HOME CONFINEMENT**

**BACKGROUND**

    Defendant Brown's Motion "Introduction" states:

> Willie Brown is 37 years old and suffers from coronary artery disease, STEM I myocardial infarction of unspecified site, "old" myocardial infarction, anterior chest pain unspecified, an enlarged heart, hypertension, Type II diabetes mellitus, obesity (BMI 39.9), asthma, glaucoma and depression.
>
> Brown had a massive heart attack in 2017 while in prison.

(ECF No. 24, September 2, 2020, at Page ID 174.)

    Defendant notes that:

> Following that heart attack, also in 2017, "drug-eliciting stents" were placed in his arteries…Unfortunately,

1

> Brown's chest pain continued. As a result, Brown underwent a second cardiac catheterization…
>
> Then, just over one year ago, Brown was rushed by ambulance to the hospital yet again with severe chest pain.

(ECF No. 24 at Page ID 175.)

Defendant acknowledges that Brown has had one instance of discipline during his five years in prison: "admitting to ownership of a greeting card that tested positive for traces of amphetamine…In addition, when Brown sought early release from the warden in May 2020, the BOP's 'First Step Act' review designated him as a 'high recidivism risk.'" (*Id*. at Page ID 176, n. 3.)

Defendant contends that Brown is at great risk of contracting COVID-19 at Canaan USP where it is virtually impossible to social distance, and given his multiple medical conditions he has a serious risk of severe harm or death from COVID-19 and seeks home confinement. (*Id*. at Page ID 180.)

Defendant also emphasizes that Brown's obesity, a BMI of 39.9, combining with his heart condition, indicates a serious risk of harm, even to men under the age of 60. Adding his Type II diabetes, along with his asthma, creates an even more serious medical situation if he contracts COVID-19 while incarcerated. (*Id*. at Page ID 183-184.)

A BOP Medical Records Summary attached to Defendant's Supplemental Brief, for the seven-month period 1-01-2020 to 7-31-2020, shows:

      1.     An asthma inhaler to be used as needed.
      2.     Eyedrops--glaucoma.
      3.     Atorvastatin--two tablets each morning.
      4.     Isosorbide Mononitrate.
      5.     Lismopril.
      6.     Diabetes tablet twice a day.
      7.     Height: 5'9", weight, 270 (BMI 39.9).

(ECF No. 24-2, Page ID 191-193, *et seq.*)

Defendant acknowledges that the BOP has concluded that he is a high risk of recidivism: one BOP discipline, several prior convictions--some violent: (assault and battery, and assault with a weapon, but the latter occurred six and eight years ago, before his present five years of incarceration).

Defendant notes that Brown began serving his 92-month sentence of imprisonment in May of 2015. His projected full-term release date is January 9, 2022. He is incarcerated at USP Canaan. Defendant calculates his out-date, with earned good time less his lost days from discipline, "would be closer to June of 2021. Based on time served alone, he has completed 68 percent of his sentence. When earned good time is factored in, Brown has completed 76 percent of his sentence." (*Id*. at Page ID 186-187.)

Finally, Defendant presents a firm release plan: (1) staying with his fiancé and their two young children, (2) she has two strong job prospects for him (a) lawn care service, and (b) with Federal Express. (*Id*. at Page ID 188.)

The Government Response in Opposition begins by setting forth Defendant's criminal history--and then noting his possession of a stolen firearm that he used in a drive-by shooting into an unoccupied vehicle in the instant case. (ECF No. 27 at Page ID 409). The Government notes that Defendant has prior felony convictions for drug possession and trafficking, malicious destruction of property, assault with intent to do great bodily harm, assault with a dangerous weapon, and home invasion-third degree. (*Id.*)

The Government concedes that Brown's medical conditions qualify as "extraordinary and compelling reasons" for release under Sentencing Guideline 1B1.13(1)(A) & cmt. n. 1(A), but concludes that he is not eligible for release because he would be a danger to the community which precludes release under U.S.S.G. 1B1.13(2): "On more than one occasion he has absconded from parole…: He was under parole supervision at the time of the shooting." (PSR ¶ 41, 42 and 51.) In addition, the Government notes that Brown's prior criminal history "combined with his disciplinary record while in prison have resulted in his designation of high risk recidivism by the BOP. (Exhibits 2, 6)." (ECF No. 27 at Page ID 411.)

The Government notes that the United States Court of Appeals for the Sixth Circuit has recently recognized that the Bureau of Prisons has reacted quickly to

confront COVID-19 spread within its facilities. *Wilson v Williams*, 961 F.3d 829, 833-34 (6th Cir. 2020).

The Government points out that 18 U.S.C. § 3582(c)(1)(A) requires that compassionate release must be consistent with the Sentencing Commission's policy statements set forth in U.S.S.G. § 1B1.13(1)(A) and cmt. n. 1, and he must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).

The Government Response notes that on 9-14-2020, at USP Canaan, Waymont, PA, one inmate has tested positive for virus and four staff have recovered. (*Id*. at Page ID 429.)

Finally, the Government notes the contradiction between Defendant's assertion of a "grave deterioration of his health…that his body has broken down since he was incarcerated in this case", and his proposed release plan: future employment with a lawn care service or Federal Express. (*Id*. at Page ID 430.)

Defendant's Reply Brief challenges the Government's assertion that it established that Defendant's gunshot into the unoccupied car, asserting that ballistics testing is not reliable. (ECF No. 28, Page ID 454.) Defendant further asserts that his prior convictions did not involve a gun, though some did involve violence, but those convictions are remote in time and not all a fair gauge of Brown's dangerousness after having served approximately five years in custody,

and that his health has deteriorated substantially. (*Id.* at Page ID 455.) Defendant's Reply notes his efforts at rehabilitation while incarcerated: he has successfully completed Drug Education and Non-Residential Drug Treatment classes. (*Id.* at Page ID 457.)

Finally, Defendant requests that this Court place him on home confinement.

## DISCUSSION

The Court recognizes that Defendant Willie Brown's Presentence Investigation Report placed him in the highest criminal history category--VI--because he has 20 points due to his multiple serious convictions, and that he committed the instant offense while under a criminal justice sentence for assault with a dangerous weapon, and Home Invasion, 3rd Degree. (PSR Page 14, ¶ 51.)

On the other hand, the Court recognizes that Defendant has been incarcerated for over five years, has served over two-thirds of his 92-month sentence, and has serious medical issues: suffering a serious heart attack in 2017 while incarcerated, requiring insertion of two stents, significant obesity, glaucoma, Type II diabetes, hypertension--all of which create a significant danger of serious illness/death if he were to contract COVID-19 while incarcerated when social distancing is difficult.

The Court recognizes that, pursuant to 18 U.S.C. § 3582(c)(1)(A), it must discuss relevant § 3553(a) factors in a petition for compassionate release, and

6

evaluate whether his compassionate release would create a serious danger to the community under Guideline § 1B1.13, even where the facts establish, and the Government concedes, that Defendant has set forth extraordinary and compelling serious medical reasons for release.

With regard to the § 3553(a) factors, the Court finds:

(1) That the nature and circumstances of his instant 2014 conviction indicate dangerous criminal behavior, and that his history and characteristics also raise concern for recidivist criminal behavior, if released to the community. The Court also finds of concern, his BOP conduct violation for possessing drugs on one occasion.

(2) There was a need in 2015 to impose a significant sentence to provide just punishment, promote respect for the law, deter similar conduct by others, and at that time, to protect the public from further crimes by Defendant.

The Court recognizes that compassionate release cannot be granted, if at the time of release, the Court finds that Defendant poses a danger to the community.

The Court notes that Defendant has served close to two thirds of his 92-month sentence--a very significant portion. A recent Sixth Circuit decision, *United States v. Kinkaid*, 805 F. App'x 394, 395-396 (6th Cir. 2020) approves of a Court's

7

consideration of a percentage of time served in its required discussion of § 3553(a) factors:

> District courts routinely weigh whether a certain amount of time served is sufficient but not greater than necessary to serve § 3553(a)'s purposes. That's what happens at sentencing. A district court may use that same calculus when dealing with whether to grant a motion for compassionate release.

## CONCLUSION

The Court finds that extraordinary and compelling reasons support granting Defendant's Motion for Compassionate Release.

1. The Court reduces his sentence to time served, and imposes supervised release for the remainder of the unserved portion of his original term of imprisonment, with the special condition of home confinement.

2. The Court will require weekly drug testing--ZERO tolerance, and require verification, in advance, of leaving home for medical appointments, and drug testing.

3. The Court concludes that this release plan will assure the safety of the community.

4. While recognizing Defendant's serious criminal history, the Court concludes that his service of over two-thirds of his significant sentence, and his present serious medical conditions,

which were not present at the time of sentencing, support this decision.

Accordingly, the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), GRANTS Defendant Brown's Motion to reduce the sentence to time-served, and orders these very strict conditions of home confinement for the unserved portion of his original term of imprisonment. The Court also orders a 14-day quarantine before release.

SO ORDERED.

DATED:  October 19, 2020        s/Paul D. Borman
                                PAUL D. BORMAN
                                UNITED STATES DISTRICT JUDGE